# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SYLVIA LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:16-CV-00502-ELR |
| DERRICK MOORE, | ) |
| GREYHOUND LINES, INC. AND | ) |
| NATIONAL FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, PA, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS GREYHOUND LINES, INC., DERRICK MOORE, AND NATIONAL FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, LR 7.1A, and LR 56.1, NDGa, Defendants Greyhound Lines, Inc., Derrick Moore, and National Fire Insurance Company of Pittsburgh, PA ("Defendants") file this Memorandum in Support of their Motion for Partial Summary Judgment, showing this Honorable Court as follows:

## I. INTRODUCTION

Plaintiff claims she was injured on February 23, 2014, when a plastic safety gate fell on the top of her left shoulder while she was a passenger on a Greyhound

bus. Although Plaintiff *only* complained of shoulder pain initially and for several months following the incident, she now claims the incident has caused her to experience headaches and ongoing pain in her neck, back, shoulder, arms, hands, and legs, and that she will require a three-level neck fusion surgery, epidurals in her neck and lower back, and radiofrequency treatment in her lower back.

Plaintiff presents suspect, anecdotal, and unreliable documents as evidence of causation for the purported injuries she alleges to her neck and shoulder only, but absolutely no evidence to support causation with respect to her remaining claims, injuries, and surgeries.[1] Defendants are entitled to judgment on all of Plaintiff's claims for which she lacks expert medical testimony.

## II. STATEMENT OF RELEVANT FACTS

Plaintiff claims she was injured on February 23, 2014, when a plastic safety gate, positioned in the aisle between the bus driver and passengers, fell on the top of her left shoulder. *See generally* Compl.; *see also* Deposition of Sylvia Lewis ("Lewis Dep."), Ex. 4. Two days later, on February 25, 2014, Plaintiff went to the Emergency Room for alleged pain in her left shoulder. Lewis Dep., pp. 112-114, 120. There were "no bruising or abrasions" or other objective signs of injury to

---

[1] Defendants have moved to strike all of Plaintiff's medical expert opinions that she failed to disclose as required by the Fed.R.Civ.P. 26(a)(2)(B) and 26(a)(2)(C).

Plaintiff's left shoulder. *Id.*, pp. 99, ln. 8 --100, ln. 13; and Lewis Dep., Ex. 6. The History of Present Illness for that visit provides:

> There is no bruising or abrasions noted to the shoulder. Denies LOC, fever, chills, chest pain, SOB, NVD, abdominal pain, ***headache***, or urinary sxs. ***No other complaints expressed at this time***.

*Id.* (emphasis added).

The February 25, 2014 medical record further states:

> Neck Normal range of motion. Neck supple. No tracheal deviation present.

*Id.*, p. 3.

Plaintiff did not complain of any other injury or pain – including headaches or pain in her neck or back. *Id*. She was diagnosed with a contusion to her left shoulder and discharged. *Id.*, p. 4.

Plaintiff next sought treatment on March 17, 2014, almost 1 month after the incident. Lewis Dep., Ex. 7. The History of Present Illness for that visit provides:

> HPI- 52/0 female presents with complaint of shoulder pain. The patient reports she was injured by panel that struck her on the left shoulder few weeks ago. When she was originally injured she states she had pain all along her body on the left side. ***The pain all has resolved but there is continued stiffness on the upper back on the left. The patient denies any numbness or weakness on the left***.

*Id.*, p. 4 (emphasis added).

The March 17, 2014 medical record further states:

> Neck Normal range of motion. Neck supple. No tracheal deviation present. No thyromegaly present….There is no objective sign of trauma seen on the left shoulder. There is full rom.

*Id.,* at p. 5.

Importantly, Plaintiff again denied any other injury or pain – including headaches or pain in her neck or back. *Id.*

Months went by before Plaintiff complained of any other pain -- including neck or back pain. Lewis Dep., pp. 115, ln. 23 - 116, ln. 12.

The above minor treatment and diagnosis makes sense as, among other things, Plaintiff testified that the plastic gate **did not** hit her head, neck or other portion of her body. *Id.*, at p. 120, ln. 3 - 22. Plaintiff testified:

> Q. Did you ever tell a doctor that the door hit your head?
> A. No, I don't think I have told a doctor the door hit my head.
> Q. Because that would be untrue; wouldn't it?
> A. That would be untrue.
> Q. Did you ever tell the doctor that the door hit your neck?
> A. The top of my shoulder.
> Q. Did you ever say your neck?
> A. I don't believe I said my neck.
> Q. Because that would be untrue as well; wouldn't it?
> A. That would be untrue, yes.
> Q. Because the only thing the door hit was the top of your shoulder?
> A. As far as I know, when it fell and hit me, it hit the top of my shoulder. That's what I'm saying, the top of my shoulder.

*Id.*

Despite the foregoing, Plaintiff's story, symptoms and alleged injuries have

-4-

evolved over time, and she now claims the incident caused her to experience ongoing pain in her neck, back, shoulder, arm, hand, and leg and headaches. *See e.g.*, Compl., ¶¶ 16-17. Attachment 1, ¶ 16 (Plaintiff's Responses to Defendant's First Interrogatories). She also claims that she will require a three-level fusion surgery to her neck, epidurals in her neck and lower back, and radiofrequency treatment in her lower back. *See e.g.*, Compl., ¶¶ 16-17; and Lewis Dep., p. 137, ln. 16 - 24.

### A. Plaintiff has no evidence that her leg pain or other pain associated with her alleged back injury are related to this incident.

Dr. Shevin Pollydore, another one of Plaintiff's treating physicians, ***only*** treated Plaintiff for neck and shoulder pain. Deposition of Shevin Pollydore MD ("Pollydore Dep."), p. 147, ln. 17-21. Dr. Chappuis purportedly[2] treated Plaintiff for neck, shoulder, back, arms, and leg pain. *See* Compl. ¶¶ 16-17. But, Dr. Chappuis only relates Plaintiff's neck pain to the incident and testified that Plaintiff's low back, arm, leg pains are not related to this incident:

> Q. Okay. Well, if you look at your February 12th note, you talk about things like pain in her feet, legs, low back, tingling throughout her body, even to her legs, correct?

---

[2] Defendants have filed contemporaneously herewith a Motion to Strike and Daubert Motion regarding Dr. Chappuis' alleged treatment and opinions in this case because he has never treated Plaintiff and provides opinions that are unreliable and do not meet Daubert's standards.

A. Yes.
Q. That's not --
A. For numbness, correct.
Q. That's not consistent with a neck injury; is it?
A. No.

Depositions of James L. Chappuis, MD. ("Chappuis Dep."), p. 68, ln. 22 - p. 69, ln. 6.

------------------------------------------------------------------------------------
Q. So I'm clear, you don't attribute the low back pain that Ms. Lewis has to this incident?
A. Correct.

*Id.*, p. 83, ln. 7 - 9.

------------------------------------------------------------------------------------
Q. No repetitive bending or stooping or twisting at the waist, is that related to – to the incident?
A. Probably not that. The neck though, no bending the neck.
Q. Okay. So limitations are she can't sit for a certain period of time, things of that nature? Is that – is that –
A. I might modify that slightly.
Q. So where it says patient may stand two to four hours and may sit four to six hours, that's not related to her neck though. That's the back; isn't it?
A. Correct. Yes.
Q. So those limitations aren't related to neck pain?
A. Yes. We could modify that, yes.
Q. And so any work limitations Ms. Lewis has felt because of her low back pain, that really has nothing to do with the incident?
A. Correct.

*Id.*, p. 119, ln. 19 - p. 120, ln. 14.

Dr. Keith Osborn also treated Plaintiff for neck and back pain. Deposition of Keith Osborn, MD ("Osborn Dep."), p. 10, ln. 14 - 16. Tellingly, he opined that

-6-

***none*** of the purported symptoms in her neck and back are related to this incident.

*See e.g.,* Osborn Dep., p. 75, ln. 2 - 16.  He testified:

> Q. … The history that you have seen regarding her statement she gave as a result of the incident, as well as her ER visits that followed within a month of the visit and of the incident, are not consistent with her experience of neck injury in this incident?
> MR. STEVENS: Objection. Leading. Calls for speculation.
> THE WITNESS: The – what I have – on the combination of the records that I reviewed and what I have seen *is not suggestive that she experienced a neck injury in this incident*.

*Id.,* p. 75, ln. 2 - 16 (emphasis added).

------------------------------------------------------------------------------------

> Q. Okay. So given all this, would you – would you change your opinion as to when her – when her – well, whether her bulging discs are related to this incident?
>
> A. Based on the information that I have currently in front of me, it seems more likely than not that her bulging discs *were not related to the accident of February 2014*.
>
> Q. Okay. Would you have an opinion as to whether – and if you have one, that is fine, to whether or not based on the history, her low back pain and the other issues she complains of, including pain in her feet, are related to this incident?
>
> A. *The delay between her accident and the onset of her symptoms makes it more likely than not that they are unrelated*.

*Id.*, p. 76, ln. 14 - p. 77, ln. 5 (emphasis added).

**B. Plaintiff has no evidence that she requires future treatment, including surgeries, epidurals, or radiofrequency treatment related to this incident.**

Dr. Pollydore has no opinion as to whether Plaintiff requires future

-7-

treatment, including surgery.  Pollydore Dep., p. 169, ln. 25 - p. 170, ln. 6.  Dr. Chappuis does not know whether Plaintiff requires surgery in her neck because *he never evaluated her*.  Chappuis testified:

> Q. And is it your opinion that she does not require surgery at this time?
> A. I haven't – you know, I've never seen her. I'd like to see her in the office and see how she's doing, but she hasn't been back to the office since June 9, 2016. So I would like to, you know, see how she's doing, have her back, reexamine her myself and see how she's doing.
>
> Chappuis Dep., p. 96, ln. 16 - 23.

------------------------------------------------------------------------------------

> Q. All right. So as you sit here today, you can't say within a reasonable degree of certainty that she requires surgery at all three levels?
> A. Correct.
>
> *Id.*, p. 98, ln. 7 - 11.

Dr. Osborn testified that Plaintiff does not need surgery and that he would not be comfortable performing any surgery on her.  He testified:

> Q. Okay. The patient does not appear to be a good surgical candidate. She should improve with time. Why was it important for you to note here that she had no nerve compression in the cervical spine or the lumbar spine?
> A. Because the reason we do surgery in the majority of instances is to relieve nerve compression.
>
> Osborn Dep., p. 78, ln. 12 - 21.

------------------------------------------------------------------------------------

> Q. Would you feel comfortable doing surgery on Ms. Lewis's neck, doctor?
> A. No.
> Q. Would you feel comfortable doing surgery on her lower back?
> MR. STEVENS: Objection. Asked and answered.
> THE WITNESS: No, I would not.

Osborn Dep., p. 81, ln. 5 - 12.

Every MRI of Plaintiff's shoulder, including the MRI taken over three years ago on August 13, 2014, has returned normal. *See e.g.,* Lewis Dep., p. 131, ln. 22 - p. 132, ln. 2. Plaintiff has not treated with any doctor for injuries purportedly related to this incident since October 2016, when she last treated with Dr. Osborn. Osborn Dep., Ex. 2, p. 5. Plaintiff has no evidence that she requires future medical treatment for any injuries purportedly causally related to this incident. *See generally* Lewis Dep.

## III. ARGUMENT AND CITATION OF AUTHORITIES

### A. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and identify facts sufficient to

establish the existence of a genuine issue for trial. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322, 323 (1986). "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'" *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (*quoting Celotex*, 477 U.S. at 322). "A nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984).

For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

**B. Defendants are entitled to partial summary judgment because Plaintiff has failed to provide expert testimony to connect her remote claims and injuries she alleges to the subject incident.**

The following claims present medical questions for which Plaintiff requires expert medical testimony to show a causal link between the subject incident and her alleged claims and injuries: (1) headaches, (2) arm pain; (3) hand pain; (4) low back pain; (5) leg and foot pain; and (6) future medical treatment – including, various surgical procedures. Plaintiff has no competent expert medical testimony to support any of these claims and damages. Therefore, Defendants are entitled summary judgment on these claims.

The necessary elements of a negligence claim "are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533 (2013). Where medical questions relating to causation are involved, a plaintiff must come "forward with expert evidence in order to survive a defense motion for summary judgment." *Nixon v. Pierce County School Dist.*, 322 Ga. App. 745, 748 (2013). Medical questions are presented when 'the existence of a causal link between the defendant's conduct and the plaintiff's injury cannot be determined from common knowledge and experience." *Cowart v. Widener*, 287 Ga. 622, 627 (Ga. 2010). Where expert evidence is required to establish a fact, it is

-11-

the plaintiff's burden at trial to offer it; thus, after the defense points to the absence of evidence in the record (at summary judgment), the plaintiff is required to come forward with admissible evidence that establishes a jury question on the issue. *Cowart v. Widener*, 287 Ga. 622, 633 (2010); *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200 (1986). Even in simple negligence cases, plaintiffs must come forward with expert evidence to survive a defense motion for summary judgment, where "medical questions" relating to causation are involved. *Id.* The diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as expert witnesses and not by lay persons. *Id.* Where a plaintiff fails to point to any expert medical testimony establishing a causal link between the alleged cause and the alleged result, the defendant is entitled to summary judgment. *Id.*

In the instant case, a medical question exists because the alleged causative link between the subject incident and Plaintiff's alleged headaches, arm pain, low back pain, leg pain, foot pain, and claim that she requires future treatment, including, three-level neck fusion surgery, epidurals in her neck and lower back, and radiofrequency treatment in her lower back cannot be determined by common knowledge and experience. Indeed, none of these purported injuries are commonly associated with a minor shoulder injury -- especially when there were no

complaints of the same for months and, in some cases, years after the incident.

Plaintiff's treatment records illustrate why expert medical testimony is required to establish a causal link between these claims and the incident. Her initial treatment record, dated February 25, 2014, two days of the incident, illustrates the minor nature of the incident as there were "no bruising or abrasions" or other objective signs of injury to Plaintiff's left shoulder." Lewis Dep., p. 99, ln. 8 - p. 100, ln. 13; and Lewis Dep., Ex. 6. Importantly, she had *no headache or other complaints* of pain to any other part of her body during this admission or her next, which occurred on March 17, 2014, almost 1 month after the incident. *Id.*; *see also* Lewis Dep., Ex. 7. Months went by before Plaintiff made any complaints for anything other than shoulder pain. Notwithstanding, Plaintiff now claims the incident caused a constellation of injuries -- including headaches, arm pain, low back pain, leg and foot pain -- for which she has no expert testimony to support a causal link to the incident. Accordingly, Defendants are entitled to summary judgment on these unsupported and unsubstantiated claims.

Plaintiff's claim that she requires future medical treatment -- including, various surgical procedures, is even more meritless. Indeed, every MRI of her left shoulder, including the one taken over three years ago on August 13, 2014 MRI, was read as normal. Plaintiff testified:

> Q. The "Conclusion" of this MRI of your left shoulder on August 13, 2014, can you read that into the record?
> A. It says normal MRI of the shoulder.
> Q. Did anyone tell you that?
> A. No.

Lewis Dep., pp. 131, ln. 22 - 132, ln. 2.

Moreover, Plaintiff has no expert medical testimony that support any future treatment, including surgery, as result of the subject incident. Dr. Chappuis testified that he does not know whether Plaintiff requires neck surgery (Chappuis Dep., p. 96, ln. 16 - 23), and Dr. Osborn testified that she does not need neck surgery. Osborn Dep., p. 78, ln. 12 - 21; and p. 81, ln. 5 - 12. Additionally, none of her doctors believe her back injury (and all pain incident thereto) is related to the subject incident. *Id.*, p. 76, ln. 14, p. 77, ln. 5; and Chappuis Dep., p. 83, ln. 7 - 9. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims that she requires future medical treatment – including, surgical procedures.

## IV. CONCLUSION

Defendants request that the Court enter an Order granting the instant Motion, ruling that Plaintiff may not recover special or general damages from Defendants associated with or arising from purported headaches, pain in her neck, back, shoulder, arm, hands, and legs, or alleged future treatment, including surgical procedures.

This 21 day of August, 2017.

                                                    **HAWKINS PARNELL THACKSTON & YOUNG LLP**

                                                    */s/ Willie C. Ellis, Jr.*

303 Peachtree Street, NE          Warner S. Fox
Suite 4000                              Georgia Bar No. 272654
Atlanta, Georgia 30308           Willie C. Ellis Jr., Esq.
wfox@hptylaw.com              Georgia Bar No. 246116
wellis@hptylaw.com            *Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SYLVIA LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:16-CV-00502-ELR |
| DERRICK MOORE, ) | |
| GREYHOUND LINES, INC. AND ) | |
| NATIONAL FIRE INSURANCE ) | |
| COMPANY OF PITTSBURGH, PA, ) | |
| ) | |
| Defendants. ) | |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the within and foregoing **DEFENDANTS GREYHOUND LINES, INC., DERRICK MOORE, AND NATIONAL FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed this day with the Clerk of Court using the CM/ECF system which will send notification to all parties of record. I further certify that the foregoing document has been prepared with Times New Roman 14-Point Font, as approved in LR 5.1C.

This the 21 day of August, 2017.

                                          **HAWKINS PARNELL
                                              THACKSTON & YOUNG** LLP

                                        */s/ Willie C. Ellis, Jr.*
                                        _____
                                        Willie C. Ellis Jr.
                                        Georgia Bar No. 246116

303 Peachtree Street, NE           *Counsel for Defendants*
Suite 4000
Telephone: (404) 614-7400
Telecopier: (404) 614-7500
wfox@hptylaw.com
wellis@hptylaw.com